975 So.2d 849 (2008)
STATE of Louisiana, Appellee
v.
Armondo James BRANTLEY, Appellant.
No. 43,067-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*850 Louisiana Appellate Project, by Edward K. Bauman, Lake Charles, for Appellant.
Paul J. Carmouche, District Attorney, Brady O'Callaghan, Karelia A. Stewart, John Ford McWilliams, Jr., Assistant District Attorneys, Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
Armondo James Brantley was charged by bill of information with possession of a firearm by a convicted felon, La. R.S. 14:95.1. After a two-day trial, a 12-member jury convicted him of the lesser included offense of attempted possession of a firearm by a convicted felon. The district court sentenced him to seven years at hard labor without benefits. Brantley now appeals, urging only insufficiency of the evidence to convict. We affirm.

Factual Background
Early on August 9, 2006, Corporal Amy Bowman of the Shreveport Police Department received a call from the clerk at a Circle K convenience store on Line Avenue. The Circle K was within Cpl. Bowman's patrol area; she had previously given her card to this and other businesses, urging them to call her directly in case of a crime. On August 9, the clerk did so, telling Cpl. Bowman that a black male in a red shirt had entered the Circle K, stolen two beers, hopped into a waiting Chrysler 300 and fled west on Olive Street. Coincidentally, Cpl. Bowman was at that moment parked on the south side of Olive Street and almost simultaneously saw a white Chrysler 300 driving by. She pursued it, activating her lights and siren, but the vehicle would not stop. A high-speed chase ensued, north on Fairfield Avenue and into the Allendale area, where another patrol car joined the pursuit. The Chrysler eventually crashed into a tree near the intersection of Murphy and Sycamore Streets; two dashboard-mounted cameras recorded the chase and its aftermath.
Corporal Bowman could see that Brantley, dressed in a red shirt, was riding in the front passenger seat. He immediately alighted from the front passenger door and fled on foot; the backseat passenger, Frankie Tillman, quickly exited through the same door and also fled on foot. The driver, Alexander James, received a head injury in the crash and could not use the driver's side door because it was damaged. He slid over the front seat and crawled out the passenger door several seconds after his colleagues had escaped; Cpl. Bowman promptly arrested him. Officer Willis, who had joined the foot chase, subdued Brantley in a brushy area off Ashton Street moments later. A third officer apprehended Tillman nearby.
Searching the Chrysler, Cpl. Bowman found a tall can of Budweiser lodged under the front passenger seat, where Brantley had been sitting. She also found a .32 caliber Smith & Wesson handgun on the front passenger floorboard, loaded with two rounds.
After receiving his Miranda warnings, Brantley admitted stealing the two beers but denied any knowledge of the handgun. He also denied being a convicted felon, but a check of his record showed a 2003 conviction for aggravated flight from an officer. James and Tillman also denied knowing anything about the handgun.
As noted, the state charged Brantley with possession of a firearm by a convicted felon. At trial in April 2007, no evidence established that any witness ever saw *851 Brantley with a gun. The state's CSI expert, Amy Muller, testified that she was unable to lift any latent fingerprints from the handgun. Corporal Bowman admitted that the gun bore a legible serial number, but the state offered no proof of its registration. She also testified that the Chrysler 300 belonged to the mother of the driver, James. By a vote of 10-2, the jury rendered the responsive verdict of guilty of attempted possession of a firearm by a convicted felon. The district court denied Brantley's motion for post verdict judgment of acquittal and later sentenced him to seven years at hard labor without benefits, near the maximum of 7½ years. La. R.S. 14:95.1 B, 14:27 D(3). Brantley now appeals.

Discussion
By one assignment of error, Brantley urges the evidence was insufficient to support the responsive verdict of attempted possession of a firearm by a convicted felon because the evidence did not exclude every reasonable hypothesis of innocence. Specifically, he contends that two other occupants of the car exited through the front passenger door after he had done so, and one of them could have left the gun on the floorboard.
The state responds that this hypothesis of innocence is unreasonable, as Brantley admitted stealing the beer that was wedged under the front passenger seat and hence had dominion and control of the floorboard. Further, neither of the other fleeing occupants was likely to have placed the gun on the front passenger floorboard, nor was it likely to have landed there as a result of the impact.
The standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94.
When circumstantial evidence is used to prove the offense, La. R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Ultimately, all evidence  both direct and circumstantial  must be sufficient under Jackson v. Virginia to prove guilt beyond a reasonable doubt to a rational jury. State v. Robinson, XXXX-XXXX (La.4/14/04), 874 So.2d 66.
To support a conviction under R.S. 14:95.1 A, the state must prove (1) the possession of a firearm, (2) a previous conviction of an enumerated felony, (3) absence of the 10-year statutory cleansing period, and (4) general intent to commit the crime. State v. Husband, 437 So.2d 269 (La. 1983); State v. Ray, 42,096 (La. App. 2 Cir. 6/27/07), 961 So.2d 607. The parties stipulated at trial that at the time of the offense, Brantley was a convicted felon for purposes of R.S. 14:95.1. Thus the state sought to show that Brantley had the requisite general intent to possess a firearm either through actual or constructive *852 possession. State v. Johnson, XXXX-XXXX (La.4/14/04), 870 So.2d 995.
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. State v. Johnson, supra; State v. Kennedy, 42,258 (La.App. 2 Cir. 8/15/07), 963 So.2d 521. A defendant's dominion and control constitute constructive possession even only temporary and even if control is shared; moreover, constructive possession entails an element of awareness or knowledge that the firearm is there and general intent to possess. Id. However, the mere presence of a defendant in the area where the weapon was seized does not alone prove that he exercised dominion and control over it and thus had it in his constructive possession. State v. Johnson, supra.
The charged offense is a general intent crime. State v. Husband, supra; State v. Ray, supra. Attempt, however, is a responsive verdict to the charged offense. La. C. Cr. P. art. 815; State v. Ray, supra. To sustain a conviction for attempted possession of a firearm by a convicted felon, the state must prove that the defendant had the specific intent to possess the weapon and that he committed an overt act toward the completion of that offense. La. R.S. 14:27 A. Nonetheless, the jury has the prerogative to compromise and render a lesser verdict whenever it could have convicted as charged. State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); State v. Kennedy, supra. When the defendant does not timely object to a legislatively provided responsive verdict which is not also a lesser and included offense of the crime charged, the reviewing court will not reverse the conviction as long as the evidence is sufficient to support the charged offense. Id.; State v. Ray, supra. Because the instant record does not show that Brantley objected to the responsive verdict, we have reviewed the evidence for sufficiency to convict of the charged offense, possession of a firearm by a convicted felon.
Brantley correctly shows that there was no direct evidence that he actually possessed the handgun. No witness saw him holding the gun; his fingerprints were not found on it. In addition, some circumstantial evidence suggests that someone else may have wielded actual possession: the Chrysler belonged not to Brantley, but to the driver's mother; both other occupants exited through the passenger door and conceivably could have dropped the gun on the floor; the high-impact collision conceivably could have propelled the gun from the back seat or elsewhere in the car to a random resting place; and it seems unlikely that Brantley would make a studious effort to conceal a stolen beer can under his seat while ignoring the loaded handgun, had he been aware of its presence.
On the other hand, it is undisputed that Brantley was occupying the front passenger seat immediately before fleeing the vehicle. He showed his dominion and control over the floorboard by stashing the beer can under the seat. Because the impact did not dislodge the beer can, it probably would not have flung the gun from the back seat. The other occupants exited the car in haste and urgency, and hence were unlikely to have the poise and presence of mind to set the gun on the front passenger floorboard. Most tellingly, during his initial post-Miranda interview, Brantley lied to police about being a convicted felon. A rational jury could easily conclude that he also lied about possessing the handgun, as he well understood the consequences of this action. On this record, we have no basis to disturb the jury's credibility call.
*853 Viewed in the light most favorable to the state, this evidence proves beyond a reasonable doubt that Brantley, as a convicted felon, had the general intent to exercise actual or constructive possession of a firearm. Although the proof of possession is circumstantial, is excludes every other reasonable hypothesis of innocence. Finally, the responsive verdict of attempt was within the jury's prerogative. The assignment of error lacks merit.

Conclusion
We have reviewed the entire record and find nothing we deem to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, Armondo James Brantley's conviction and sentence are affirmed.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
The state presented no evidence that defendant exercised actual possession of the gun. The actual location of the gun before the accident is unknown. The high-speed crash and the parties' exit of the vehicle through the single front door prevents circumstantial proof of defendant's guilt which excluded beyond a reasonable doubt the possible dominion and control over the weapon by the other occupants. It is unclear that the defendant must have been aware of the gun's presence in the car before the accident. See State v. Evans, 29,675 (La.App. 2d Cir.9/24/97), 700 So.2d 1039. Instead, the state's circumstantial evidence gives rise to competing inferences about the possible possession of the gun by any one of the three occupants. There is a further possibility that the owner of the vehicle alone may have known the gun's location in the vehicle.
If it cannot be reasonably concluded that any or all of these parties were in possession of the gun in its probable location under the seat before the accident, how can the chaotic situation that resulted from this violent crash somehow spin-the-bottle of circumstance to clearly land the gun's possession thereafter on the defendant? I respectfully dissent.