GASKINS, J.
 

 _JjThe defendant, Delvin Jerome Law, was convicted of possession of a firearm by a convicted felon and subsequently adjudicated a third felony offender. He was sentenced to 30 years at hard labor, with credit for time served, to run concurrent to any other sentence. The defendant now appeals his convictions and sentence. The defendant’s conviction for possession of a firearm by a convicted felon is affirmed. The defendant’s habitual offender adjudication and sentence are vacated and the matter is remanded for resentencing.
 

 FACTS
 

 On the evening of March 26, 2008, Officer Frankie Miles of the Shreveport Police Department was on patrol in the Cedar Grove neighborhood of Shreveport, Louisiana. He was on directed patrol, which is the patrolling of a specific area in response to citizen complaints of illegal activity. In
 
 *767
 
 the present case, there had been complaints of open-air drug sales, gang activity, weapon discharges and shootings. The area contains multiple boarded-up dwellings which Officer Miles characterized as crack houses.
 

 While traveling in the area between 2:00 and 3:00 a.m., Officer Miles noticed the defendant’s car parked in front of a house where the officer had previously made a drug-related arrest. Concerned that someone inside might be hurt or in need of assistance, Officer Miles turned his patrol car around and pulled up behind the parked car. The defendant was alone sitting in the driver’s seat of the vehicle. When Officer Miles asked whether |2he needed any assistance, the defendant said no and indicated that he was just parked while talking on his cell phone.
 

 Because the defendant had not been speaking on a phone when approached, Officer Miles’ suspicions were aroused. The defendant also avoided eye contact, spoke in short sentences and claimed not to have any identification. Officer Miles asked him to step out of the vehicle. As he exited the vehicle, the officer looked at the defendant’s hands and waistline for the presence of a weapon; he noticed , a big bulge in the defendant’s pocket. Upon performing a pat-down of the defendant, Officer Miles could not determine the nature of the bulge, so he reached into the defendant’s pockets and pulled out a large amount of cash. Cash was also found in the defendant’s other three pockets. The defendant began to look around as if he might run, so Officer Miles handcuffed him and placed him in the back seat of his patrol car.
 

 When the defendant refused to consent to a search of the vehicle, Officer Miles called a K-9 unit which arrived within 10 to 15 minutes. Officer Jerry Curtis, the canine handler who responded, testified that he arrived on the scene at approximately 2:20 a.m. He observed the defendant in the back of Officer Miles’ patrol car and advised the defendant that he was about to perform an open-air narcotics search around the exterior of the defendant’s vehicle. As the dog walked around the vehicle, it alerted on the passenger side front door. Officer Curtis opened the passenger door to allow the dog to enter the car. Inside the vehicle, the dog alerted on the center arm console and on the floorboard under the driver’s seat. Officer laCurtis searched these two areas. In the console, he found narcotics. He also found a Glock .357 caliber pistol under the driver’s seat. He testified that the gun’s magazine was loaded, but was unsure about whether there was a round in the chamber. He described the gun’s location as very accessible to someone sitting in the driver’s seat of the vehicle.
 

 After Officer Curtis retrieved the narcotics and handgun from the vehicle, Officer Miles ran the defendant’s criminal history and discovered that he had a prior “felony burglary charge.” He arrested the defendant on a charge of possession of a firearm by a convicted felon. Officer Miles also indicated that he had looked in the glove box and found a rental receipt showing that the vehicle the defendant was driving was rented to a female. Officer Miles did not remember the name of the female and his testimony was not specific as to when his search of the glove box occurred.
 

 The defendant was charged by bill of information with one count of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. The matter was tried on May 21, 2009, before a jury.
 

 At trial, in addition to the testimony of Officers Miles and Curtis, the state offered the testimony of Lt. Owen McDonnell, an expert in fingerprint analysis and identifi
 
 *768
 
 cation. Lt. McDonnell testified as to the difficulty in obtaining prints from a Glock pistol due to its design. Because he had not personally processed the state’s evidence, he could not say whether prints were present on the weapon and, if so, to whom they belonged.
 

 Lt. McDonnell also testified that, based on a comparison of the defendant’s fingerprints and the fingerprints appearing on a First Judicial ^District Court amended bill of information in docket number 212,809 (charging two counts of simple burglary of an inhabited dwelling and one count of illegal possession of stolen things), the defendant in the instant case is the same person convicted under that docket number. The minutes from docket number 212,809 reflect that on July 12, 2001, the defendant pled guilty as charged to all three counts. On the first two counts, simple burglary of an inhabited dwelling, the defendant was sentenced to five years at hard labor, the first year to be served without the benefit of parole, probation or suspension of sentence, and the remainder of the sentence suspended subject to three years of supervised probation. On the third count, illegal possession of stolen things, the defendant was sentenced to five years at hard labor, with all five years suspended, subject to three years of supervised probation, with all sentences to run concurrent with any other sentence the defendant was obligated to serve.
 

 During the presentation of the state’s case, the defendant moved for a mistrial on the basis that the state’s witnesses made reference to inadmissible evidence of other crimes in violation of La. C.E. art. 404(B)(1) when they mentioned the discovery of narcotics in the defendant’s vehicle at the time of the arrest. During the cross-examination of Officer Miles, he was asked by defense counsel whether he had tried to contact the female listed on the rental agreement found in the glove box. Officer Miles responded:
 

 No, sir, I don’t think I did because once he-once we found the narcotics and the weapon, it was all about getting him secured.
 

 At the conclusion of the state’s examination of Officer Curtis, the following colloquy took place:
 

 | gjOfficer Curtis: ... In the center console there was a plastic baggy that had eight individually packaged -
 

 A.D.A.: You had narcotics located there?
 

 Officer Curtis: Yes.
 

 The trial court refused to grant a mistrial.
 

 The defense called Debreyia Gray, an acquaintance of the defendant who had rented the car that the defendant was occupying at the time of his arrest. Ms. Gray testified that she had known the defendant a couple of months and had accompanied him to the general vicinity of his arrest where a woman known to Ms. Gray only as “Sheila” hosted games of “Tonk,” a form of gambling. On the Monday or Tuesday before the defendant’s arrest, Ms. Gray rented the vehicle. She testified that her younger brother, Lance, had driven the vehicle just prior to its use by the defendant. She stated that her brother was currently incarcerated in De-Soto Parish on a drug charge. On cross-examination, she admitted that she had never seen her brother with drugs or a gun and had no idea to whom the gun belonged.
 

 The jury returned a unanimous verdict of guilty as charged. The defendant was initially sentenced on June 25, 2009, to 12 years at hard labor without the benefit of probation, parole or suspension of sentence, and was ordered to pay a $5,000.00 fine.
 

 
 *769
 
 The state filed a habitual offender bill charging the defendant as a fourth-felony offender. Pursuant to the habitual offender proceedings, the defendant was adjudicated a third-felony offender and on September 10, 2009, was resentenced to 30 years’ imprisonment at hard labor. In imposing | ^sentence, the trial court noted that the defendant had an extensive criminal record which included numerous weapons, drug, and burglary charges from 2001 through the present. A subsequent motion to reconsider sentence was denied.
 

 The defendant appealed, arguing that there was insufficient evidence to support his conviction of possession of a firearm by a convicted felon and that the trial court erred in denying his motion for mistrial based upon the improper introduction of other crimes evidence. He also argued that his habitual offender sentence is excessive.
 

 SUFFICIENCY OF THE EVIDENCE
 

 The defendant argues that the evidence to convict him on the charge of possession of a firearm by a convicted felon was insufficient because there was no evidence that he had knowledge of the weapon’s presence in the vehicle and because the state failed to prove that the cleansing period between the predicate conviction and the present one had not elapsed. These arguments are without merit.
 

 Legal Principles
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 'writ denied,
 
 2009-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Robbins,
 
 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. La. R.S. 15:438 provides that the rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See also,
 
 State v. Gipson,
 
 45,121 (La.App.2d Cir.4/14/10), 34 So.3d 1090.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by |sviewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances estab-
 
 *770
 
 líshed by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime.
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 2007-2053 (La.3/7/08), 977 So.2d 896.
 

 To support a conviction for possession of a firearm by a convicted felon, the state must prove: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1;
 
 State v. Husband,
 
 437 So.2d 269 (La.1983);
 
 State v. Ray,
 
 42,096 (La. App.2d Cir.6/27/07), 961 So.2d 607. The general intent to commit the offense of possession of a firearm by a convicted felon may be proved through the actual possession of the firearm or through the constructive possession of the firearm. See
 
 State v. Johnson,
 
 2003-1228 (La.4/14/04), 870 So.2d 995;
 
 State v. Chatman,
 
 43,184 (La.App.2d Cir.4/30/08), 981 So.2d 260. For purposes of the offense of possession of a firearm by a convicted felon, whether the proof is sufficient to establish possession turns on the facts of each case. Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence.
 
 State v. Chatman, supra.
 

 | nConstructive possession of a firearm occurs when the firearm is subject to the defendant’s dominion and control. A defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature.
 
 State v. Webber,
 
 99-23 (La.App. 5th Cir.7/27/99), 742 So.2d 952;
 
 State v. Bailey,
 
 511 So.2d 1248 (La.App. 2d Cir.1987),
 
 writ denied,
 
 519 So.2d 132 (La.1988). Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it.
 
 State v. Chatman, supra; State v. Kennedy,
 
 42,258 (La.App.2d Cir.8/15/07), 963 So.2d 521.
 

 Discussion
 

 After a thorough review of the record, and viewing the evidence presented in this case in the light most favorable to the state, a rational trier of fact could find that the state proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of possession of a firearm by a convicted felon.
 

 The evidence established that the defendant was the only person occupying the vehicle when the gun was found. The gun was under the seat he was sitting in, was loaded and was easily accessible. The defendant was in a high crime area, carrying large amounts of cash. He acted nervous when approached by law enforcement, refused to make eye contact, and glanced around as though looking for an escape route. The defendant claimed not to have identification despite the fact that he had apparently been operating a motor vehicle. When booked into the jail, the defendant did, in fact, have his driver’s license. Lt. McDonnell testified that it was |innormal for a Glock handgun to yield no usable fingerprints, an explanation that the jury could rationally accept. Given the circumstantial evidence, this court will not disturb the rational conclusion that the defendant acted nervous and evasive because he knew he had a gun in the car.
 

 Courts have generally found evidence of constructive possession when a gun is found in an area occupied by the defendant. In
 
 State v. Webber, supra,
 
 the court held the evidence was sufficient to prove
 
 *771
 
 the defendant knowingly possessed the gun found on the passenger side floorboard during a traffic stop in which there was contradictory testimony as to whether he was the sole occupant of the vehicle. In
 
 State v. Jackson,
 
 97-1246 (La.App. 5th Cir.4/13/98), 712 So.2d 934,
 
 writ denied,
 
 1998-1454 (La.10/16/98), 726 So.2d 37, the fifth circuit held the evidence was sufficient to prove the defendant knowingly possessed a gun found in his bedroom under the mattress where he regularly slept, despite the argument that other friends and relatives had stayed in the defendant’s bedroom during a recent visit and that the gun could have belonged to them. See also
 
 State v. Brantley,
 
 43,067 (La.App.2d Cir.2/13/08), 975 So.2d 849,
 
 writ denied,
 
 2008-0604 (La.10/03/08), 992 So.2d 1010.
 

 With regard to the prior felony, the evidence showed that the defendant pled guilty to two counts of simple burglary of an inhabited dwelling and one count of illegal possession of stolen things on July 12, 2001, and was sentenced to hard labor terms on all three counts. The present offense occurred on March 26, 2008, less than seven years later. It is clear that less than 10 years elapsed between the dates of the convictions; |n therefore, the date the defendant completed the sentence is irrelevant.
 
 State v. Patterson,
 
 588 So.2d 392 (La.App. 4th Cir.1991). Thus, the state met its burden of proving that the defendant had been convicted of a prior felony, and had not remained conviction-free for 10 years following his prior conviction.
 

 OTHER CRIMES EVIDENCE
 

 The defendant argues that the trial court erred in denying his motions for a mistrial made after the state and its witnesses repeatedly made reference to the narcotics found in the vehicle at the time of the defendant’s arrest. He claims that this constituted other crimes evidence inadmissible under La. C.E. art. 404(B). This argument is without merit.
 

 Legal Principles
 

 La. C.E. art. 404(B)(1) provides:
 

 Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. [Emphasis supplied.]
 

 Evidence of integral acts, or
 
 res gestae,
 
 is admissible under La. C.E. 404(B)(1) without requiring the state to give
 
 Prieur
 
 notice or the trial court conducting a
 
 Prieur
 
 hearing.
 
 State v. Mandosia,
 
 36,827 (La.App.2d Cir.4/9/03), 842 So.2d 1252. Evidence of integral acts, or
 
 res gestae,
 
 is admissible so that evidence may be presented in context of the 112circumstances.
 
 State v. Grant,
 
 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 2007-1193 (La.12/7/07), 969 So.2d 629. The Louisiana Supreme Court has approved the admission of other crimes evidence in this context:
 

 This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such
 
 *772
 
 cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. [Citations omitted.]
 

 State v. Brewington,
 
 601 So.2d 656 (La.1992).
 

 The test of integral act evidence is not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness, with power not only to support conclusions, but to sustain the willingness of jurors to draw the inference, whatever they may be, necessary to reach an honest verdict.
 
 State v. Gaddis,
 
 36,661 (La. App.2d Cir.3/14/03), 839 So.2d 1258,
 
 writ denied,
 
 2003-1275 (La.5/14/04), 872 So.2d 519,
 
 cert. denied,
 
 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005).
 

 Discussion
 

 The defendant objects to references made by Officer Miles and Officer Curtis during their testimony to the discovery of narcotics in the center console of the vehicle occupied by the defendant at the time of his arrest. In his brief, he also complains about the prosecutor’s question during the cross-examination of Ms. Gray as to whether “the crack cocaine | ,aand the gun” belonged to her. Officer Miles testified that once the defendant refused to consent to a search of his vehicle, he called for the K-9 unit and Officer Curtis responded. The dog was used to conduct an open-air search of the vehicle. The evidence of the narcotics seized from the vehicle was presented in the context of proving that narcotics had been found pursuant to a K-9 unit alerting on it. Therefore, it was discovered in the continuous chain of events surrounding the discovery of the defendant being in possession of the handgun. The evidence of the presence of the narcotics provided narrative completeness to the state’s case and presented the full context of facts necessary for the jurors’ ultimate determination of the defendant’s guilt. The evidence allowed the jury to draw proper inferences regarding the defendant’s intentions as the sole occupant of a vehicle parked in front of an abandoned house in the middle of a high-crime area during the early morning hours.
 

 The evidence of the presence of narcotics contemporaneous with the police discovery of a firearm in the vehicle provided not only narrative completeness to a case which began as a traffic stop, but also formed an integral part of the context facts in which jurors evaluated the state’s case for a convicted felon’s exercise of dominion and control over the weapon found under the driver’s seat of the vehicle the defendant was driving. Accordingly, the trial court did not err in denying the defendant’s motions for mistrial on the basis of other crimes evidence being admitted at trial.
 

 J^ERROR PATENT REVIEW
 

 In our error patent review, we note that the trial court erred in adjudicating the defendant to be a third-felony offender based upon this record. Accordingly, we reverse the habitual offender adjudication and remand for resentencing.
 

 La. R.S. 14:95.1 states in pertinent part: It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities,
 
 *773
 
 manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.
 

 A sentence imposed under La. R.S. 14:95.1 may be enhanced under the habitual offender law, as long as the prior felony conviction used as an element in the firearm conviction is not also used as a prior felony conviction in the multiple offender bill of information.
 
 State v. Baker,
 
 2006-2175 (La.10/16/07), 970 So.2d 948,
 
 cert. denied,
 
 — U.S. -, 129 S.Ct. 39, 172 L.Ed.2d 49 (2008).
 

 In the present case, the state used at least one of the defendant’s July 12, 2001, convictions for simple burglary of an inhabited dwelling in docket number 212,809 to obtain the conviction for illegal possession of a |, ¿firearm by a convicted felon. This conviction was listed as the predicate offense on the bill of information, although it is impossible to tell which of the two counts of simple burglary of an inhabited dwelling was used. The state then used a conviction for simple burglary of an inhabited dwelling, entered on the same date, in obtaining the defendant’s habitual offender adjudication.
 

 La. R.S. 15:529.1(B) provides in pertinent part that:
 

 Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.
 
 [1]
 

 Because La. R.S. 15:529.1 dictates that the three convictions obtained on July 12, 2001, are to be considered as one conviction for purposes of the multiple offender adjudication, and the state used at least one of the convictions for simple burglary of an inhabited dwelling as the predicate offense for the charge of possession of a firearm by a convicted felon, the July 12, 2001, convictions cannot be used for enhancement purposes in the multiple offender adjudication. The trial court erred in adjudicating the defendant as a third-felony offender based on the defendant’s convictions in the present case and in docket number 212,809.
 

 Accordingly, the habitual offender adjudication and sentence are vacated and the matter is remanded for resentencing.
 
 [2]
 

 ^CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction for possession of a fire
 
 *774
 
 arm by a convicted felon is affirmed. The defendant’s habitual offender adjudication and sentence are vacated and the matter is remanded for resentencing.
 

 CONVICTION FOR POSSESSION OF A FIREARM BY A CONVICTED FELON AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED FOR RESENTENCING.
 

 [1]
 

 . On October 19, 2004, the Louisiana State Supreme Court reversed its prior jurisprudence and determined that under the habitual offender statute, multiple convictions obtained on the same date based on unrelated conduct could be counted separately for sentence enhancement. See
 
 State v. Johnson,
 
 2003-2993 (La. 10/19/04), 884 So.2d 568. The legislature then amended La. R.S. 15:529.1(B). The effect of the amendment was to provide that
 
 State v. Johnson, supra,
 
 did not have retroactive effect.
 

 [2]
 

 . Because we vacate the multiple offender adjudication and remand for resentencing, the defendant's assignment of error alleging that his habitual offender sentence is excessive is moot.